# CIRCUIT COURT OF THE CITY OF NORFOLK

Howard C. Frizzell

v.

Danieli Corporation et al.

December 22, 2010

Case No. CL09-5120

By Judge Karen J. Burrell

This matter came before the Court on Defendant Extreme Machine and Fabrications, Inc.'s (Extreme Machine) Motion to Dismiss for Lack of Personal Jurisdiction. Extreme Machine, Plaintiff, and Defendant Danieli Corporation (Danieli) have filed briefs, and, on November 18, 2010, the Court heard oral argument.

After carefully considering the parties' arguments, the Court finds that Extreme Machine is not subject to personal jurisdiction in the Commonwealth of Virginia. Extreme Machine's conduct does not place itself within the reach of Virginia's long-arm statute. Further, even if Virginia's long-arm statute reached Extreme Machine, its application in this current case would offend the guarantees of due process. Accordingly, the case against Extreme Machine is dismissed for the reasons stated below.

*Factual Background*

Plaintiff claims he sustained serious injury during the course of his employment while attempting to move with a forklift a box shipped from Extreme Machine's facility to the Norfolk, Virginia, destination. The box was labeled as weighing 2,800 pounds, which Plaintiff's forklift, having a capacity to lift 3,000 pounds, was equipped to handle. As it turned out, the box weighed significantly more, 4,144 pounds. Extreme Machine erroneously recorded the weight of the box on the box itself as well as on shipping documents accompanying the delivery to Plaintiff's place of employment. Because it could not handle the weight of the box, Plaintiff's forklift tipped, causing his injuries.

Extreme Machine is incorporated in Ohio and also has an office in Pennsylvania. Because Extreme Machine now claims this Court cannot exercise personal jurisdiction over it, it is important to flesh out the relationship between the three corporate defendants in this case and their respective relationships to the particular shipment at issue. Defendant ILVA America, Inc. (Ilva) placed an order with Danieli. This order included the mislabeled box Plaintiff attempted to move. Danieli had a relationship with Extreme Machine whereby it would employ Extreme Machine, a machine shop and fabrication shop, to (1) machine or fabricate parts for them and (2) act as a warehouse for them. At the time the order in question was shipped from Extreme Machine's facility, Danieli did not operate its own warehouse. In its Youngstown, Ohio, facility, Extreme Machine would make some parts for orders made by Danieli's customers and would house parts on behalf of Danieli shipped from other suppliers.

When all parts of an order from one of Danieli's customers were built and physically located in Extreme Machine's facility, Larry Russo, employed by Danieli in a shipping and logistics capacity, would call Chris Jones, then employed by Extreme Machine to handle shipping and receiving for Danieli at Extreme Machine's facility. Mr. Russo would inform Mr. Jones that all the parts were completed by Extreme Machine or had been shipped from other suppliers and were ready to be packaged as one order. Mr. Russo would fax a list of the identification numbers of all the merchandise that needed to be shipped with the order. Mr. Jones would then prepare the order for shipment. He would gather and package the various components of the order, parts made by Extreme Machine or those shipped to Extreme Machine's facility by other suppliers, and weigh and label the packages. Danieli provided Extreme Machine with preprinted bills of lading, contracts for carriage, on which to record contents of the order and package weight and dimensions, among other things. Extreme Machine might be given instructions indicating, for example, that the shipment would be traveling internationally, which would require special preparation (e.g., rust-proofing to protect against ocean salt water). At the

time of shipment preparation, however, Extreme Machine would not be aware of the identity of Danieli's customer or the final destination of the package. So, for instance, at the time Extreme Machine was preparing the order for Ilva that is at instant issue, Extreme Machine had no knowledge that the boxes would be shipped to Virginia. Mr. Russo might, on the other hand, be aware of the final destination; he knew from his years of experience at Danieli that purchases by Ilva were ultimately destined for Italy.

When Extreme Machine finished shipping preparation, Mr. Jones would inform Mr. Russo at Danieli, and Mr. Russo would make arrangements with the customer to ship. Danieli's customers dictate how an order will ship. Sometimes Danieli's customers chose to arrange their own shipping, paying for it themselves, sometimes the customers chose to have Danieli arrange shipping, again paying for it themselves, and sometimes, depending on how the items were sold to the customer, Danieli would arrange and pay for shipping. In this case, the order was quoted to Ilva without a shipping price. At Ilva's direction, the freight was to be picked up from the Youngstown facility by Con-Way Shipping and Ilva was to pay for shipping upon the freight's arrival. Neither Danieli nor Extreme Machine paid for shipping. In fact, all of Extreme Machine's products left their facility free on board (FOB). Extreme Machine prepared their products for shipment, but they neither arranged nor paid for shipping. This was handled by their customers.

Danieli informed Extreme Machine that their customer wanted this particular freight shipped to Norfolk, Virginia, via Con-Way Shipping. Mr. Jones then contacted Con-Way Shipping informing them a package was prepped for them to ship to Norfolk. Prior to receiving information from Mr. Russo after he spoke with the customer about how the freight was to be shipped, Extreme Machine would have no knowledge of the order's destination. To Extreme Machine, it was irrelevant where their products were going. Extreme Machine built products for its own customers, e.g., Danieli, who in turn sold the products to their customers, e.g., Ilva. Ilva would have no knowledge that Danieli's products were even made by Extreme Machine.

The relationship between these companies can be summed up as follows. Ilva ordered a product from Danieli; Danieli would order parts from Extreme Machine. Extreme Machine would make those parts and store parts Danieli may have ordered through other manufacturers. When all parts were present and accounted for, Danieli would instruct Extreme Machine to package them as part of a single order for shipping. Ilva directed Danieli how to ship its order, and Danieli then contacted Extreme Machine again to prepare the package for pick up by Ilva's chosen carrier.

Other than through third parties who purchase from its customers, Extreme Machine has no contact with Virginia. Extreme Machine is not registered to conduct business in Virginia. Extreme Machine has no

customers in Virginia. Extreme Machine does not advertise. Nor does Extreme Machine have a website. Extreme Machine provided services for Danieli exclusively in Ohio and Pennsylvania. Extreme Machine makes and packages their products but ships everything FOB, neither arranging nor paying for shipping. The only way Extreme Machine products make their way to Virginia is by the hand of its customers.

### Personal Jurisdiction

In determining whether the Court can exercise personal jurisdiction over Extreme Machine, the Court engages in a two-part analysis. First, the Court asks "whether Virginia's long-arm statute reaches the non-resident defendant given the cause of action alleged and the nature of the defendant's Virginia contacts." *Massey Energy Co. v. United Mine Workers*, 69 Va. Cir. 118, 121 (2005) (quoting *De Santis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 422-23 (E.D. Va. 1996)). Next, the Court must "ensure that the exercise of *in personam* jurisdiction over a non-resident Defendant complies with the `due process requirements of the Fourteenth Amendment to the United States Constitution'." *Id.* (quoting *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454, 397 S.E.2d 873 (1990)).

To survive a jurisdictional challenge on a motion to dismiss, a plaintiff need only make a *prima facie* showing of personal jurisdiction. See *id.* at 120; *Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681, 683-84 (E.D. Va. 1999). Where a defendant merely denies the plaintiff's assertions, the Court "must construe all relevant allegations in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction." *Rannoch*, 52 F. Supp. 2d at 684. Bald denial of pleaded facts will not sustain a challenge; if the parties' allegations are contradictory, the Court will accept those related in Plaintiff's complaint as true. See *Massey Energy*, 69 Va. Cir. at 121. Ultimately, however, Plaintiff bears the burden of proving by a preponderance of the evidence that the Court has personal jurisdiction over each defendant. *Id.* at 120. This is not a case in which Extreme Machine flatly denies jurisdiction without offering factual proof. Where, as here, the existence of jurisdiction turns on disputed facts, the Court may decide the issue based on the evidence presented by the parties. See *Azzure Denim, L.L.C. v. E. & J. Lawrence Corp.*, 69 Va. Cir. 485, 486 (2006); see also *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Bay Tobacco, L.L.C. v. Bell Quality Tobacco Products, L.L.C.*, 261 F. Supp. 2d 483, 492 (E.D. Va. 2003). The Court may consider all informational sources the parties presented. *Azzure Denim*, 69 Va. Cir. at 486.

## I. *Virginia's Long-Arm Statute*

The Court's first inquiry is whether Virginia's long-arm statute reaches non-resident Extreme Machine's conduct making it subject to the jurisdiction of this Court. The Supreme Court of Virginia has held that "it is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560 (1999) (quoting *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664 (1971)). Thus, the Court should find jurisdiction where it can. In response to Extreme Machine's jurisdictional challenge, Plaintiff alleges jurisdiction is proper under Va. Code § 8.01-328.1(A)(2) and (4). Danieli asserts jurisdiction over Extreme Machine is additionally proper under Va. Code § 8.01-328.1(A)(1). Va. Code § 8.01-328.1(A)(1) permits the Court to exercise jurisdiction over a defendant who transacts any business in Virginia. This is a single-act statute that requires only one transaction to confer jurisdiction on the Court. *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 260, 377 S.E.2d 388 (1989). Va. Code § 8.01-328.1(A)(2) permits the Court to exercise jurisdiction over a defendant who contracts to supply services or things in Virginia. Finally, Va. Code § 8.01-328.1(A)(4) permits the Court to exercise jurisdiction over a defendant who causes tortious injury in Virginia by an act or omission outside of Virginia if the defendant regularly does or solicits business in Virginia, engages in any other persistent course of conduct in Virginia, or derives substantial revenue from goods used or consumed or services rendered in Virginia. Reviewing each section in turn, the Court finds that neither confers jurisdiction over Extreme Machine.

## A. *Va. Code § 8.01-328.1(A)(1): Transacting Business in Virginia*

Extreme Machine does not transact business in Virginia. Based on the facts presented, it is clear that Extreme Machine does not own property in Virginia and is not registered to do business in Virginia. Extreme Machine does not have customers in Virginia. Any services provided for Danieli were executed exclusively in Ohio and Pennsylvania. Though § 8.01-328.1(A)(1) requires but one transaction, there exists no transaction in evidence to satisfy this section. Although Plaintiff does not address § 8.01-328.1(A)(1), Danieli contends that, by agreeing to ship Ilva's order to Norfolk, Extreme Machine was transacting business in Virginia for purposes of this statute. This, however, mischaracterizes the nature of any conduct on the part of Extreme Machine in that transaction.

Extreme Machine sold all of its products under FOB terms from its facilities in either Ohio or Pennsylvania. FOB is a mercantile term standing

for "free on board." It denotes that the seller is responsible for delivering the goods to the consignee at the specified location, which would be Extreme Machine's facility in this instance. See *Bay Tobacco*, 261 F. Supp. 2d at 494. The effect of an FOB term is that, upon delivery to the specified location, both title and risk of loss pass from the seller to the buyer. *Id.*

In *Bay Tobacco v. Bell Quality Tobacco Products*, the U.S. District Court for the Eastern District of Virginia considered the effect of an FOB term as it relates to Virginia's long-arm statute. There, Bay Tobacco, a Virginia company, alleged a contract with Bell Tobacco, a North Carolina company, to produce a certain brand of cigarette. Bell delivered the cigarettes FOB Stantonsburg, North Carolina; both title and risk of loss passed to Bay in North Carolina. That Bell delivered the cigarettes FOB to a common carrier in North Carolina "diminish[ed] the jurisdictional significance of such shipments" to the Virginia company. *Id.* at 494. The court opined that "Bell's shipment of Bay's cigarettes into Virginia [did] not show that Bell transacted business in the Commonwealth, and the [c]ourt [would] not exercise jurisdiction . . . on that basis." *Id.*; see also *Ajax Realty Corp. v. J. F. Zook, Inc.*, 493 F.2d 818, 821 (4th Cir. 1972) (The Court declined to read the statute to reach a non-resident manufacturer who ships its products directly to the ultimate purchaser rather than to a non-resident distributor either as an accommodation to the distributor or as its agent for purposes of shipment.) Especially powerful about the ruling in *Bay Tobacco* is that Bay was a Virginia company, whereas in the current case, Danieli is a Pennsylvania company.

Extreme Machine did not agree to ship the freight to Virginia, as Danieli contends. Rather, it agreed to package and prepare it for shipping, which was later arranged by Danieli and its customer. Any conduct related to the freight's shipment to Virginia on the part of Extreme Machine was completed in Youngstown, Ohio. Because the agreement to ship to Virginia that Danieli alleges cannot be characterized as a business transaction in Virginia and because there is no other evidence establishing even a single transaction in Virginia, the Court finds that Extreme Machine did not transact business in Virginia. The Court cannot exercise jurisdiction over Extreme Machine under Va. Code § 8.01-238.1(A)(1).

B. *Va. Code § 8.01-328.1(A)(2): Contracting To Supply Services or Things in Virginia*

Extreme Machine did not contract to supply services or things in Virginia. The facts clearly evince that any *services* provided by Extreme Machine to Danieli occurred exclusively in Ohio by Mr. Jones. Plaintiff and Danieli argue, however, that, by virtue of its contract with Danieli, Extreme Machine repeatedly contracted to supply *things* to Virginia. They contend that Extreme Machine knew its products were shipped to Virginia; an

Extreme Machine employee would weigh and package the products and fill out the bill of lading forms. Eight Danieli orders were shipped to Virginia in the five years preceding the institution of this suit. Again, however, this mischaracterizes the nature of Extreme Machine's conduct. In fact, Plaintiff more accurately describes the conduct itself: "Defendant Extreme . . . *facilitated* the shipment of numerous Danieli orders from Extreme's machine shop." (Plaintiff's Mem. of Law in Opp. 4 (emphasis added).)

The Court finds that Extreme Machine contracted to supply its products to Danieli in Ohio and Pennsylvania only. All products were sold FOB, with the specified location being Extreme Machine's facility in Youngstown, Ohio. It was irrelevant to Extreme Machine to whom Danieli later sold its products and how and where they traveled to reach their final destination. Extreme Machine only learned that the particular freight at issue would be traveling to Norfolk after the products were packaged and ready to ship. It only called Con-Way Shipping to inform it that the freight was ready; Danieli and Ilva procured the shipping deal with Con-Way, not Extreme Machine.

Plaintiff's description of Extreme Machine's conduct is an apt one because the facts show that Extreme Machine did facilitate, or make easier, *Danieli's* supplying of goods to Virginia. Rather than simply sell its products to Danieli, Extreme Machine also packaged and prepared them for shipping. Extreme Machine's employee filled out forms provided by Danieli and at the direction of Danieli's employee. And Extreme Machine would call the carrier selected by Danieli and/or Danieli's customer to inform it that the packages were ready to ship. This certainly helped to facilitate Danieli's contracts to supply things in Virginia. However, this cannot be described as contracting to supply things in Virginia on the part of Extreme Machine. Extreme Machine only contracted to supply things to Danieli in Ohio and Pennsylsvania; Extreme Machine had no direct role in what happened to its products after they were made available to the freight carrier in Ohio. The facts simply do not support an exercise of jurisdiction under § 8.01-328.1(A)(2), and Plaintiff has failed to meet his burden of proving jurisdiction lies.

### C. *Va. Code § 8.01-328.1(A)(4): Regularly Does or Solicits Business or Derives Substantial Revenue from Goods Used in Virginia*

Finally, although Plaintiff has adequately alleged for these purposes that Extreme Machine's failure to properly label the box in question in Ohio caused a tortious injury in Virginia, Extreme Machine does not regularly do or solicit business in Virginia, does not engage in any other persistent course of conduct in Virginia, nor does it derive substantial revenue from goods used or consumed in Virginia. Extreme Machine has affirmatively tried to avoid any conduct in any state outside of Ohio or Pennsylvania.

In alleging jurisdiction is proper under Va. Code § 8.01-328.1(A)(4), both Plaintiff and Danieli point to eight transactions between Danieli and Extreme Machine in which Extreme Machine's products were delivered to Virginia. These transactions occurred during the five years preceding the institution of this suit and generated a total of $265,917 (with a yearly average of $82,385) in revenue for Extreme Machine. Of those eight, six were transactions between Danieli and Ilva involving shipment to Norfolk.

First, Extreme Machine does not regularly do or solicit business in Virginia. Extreme Machine operates out of Ohio and Pennsylvania. Extreme Machine does not advertise, nor does it even have a website that could be accessed from Virginia. It has no Virginia customers. Although some of its products make their way to Virginia, Extreme Machine does not arrange their shipping. Extreme Machine simply makes them available to the buyer in Ohio.

Second, and for the same reasons, Extreme Machine cannot be said to engage in any other persistent course of conduct in Virginia. Extreme Machine has not engaged in any conduct in Virginia, let alone a persistent course of conduct. Extreme Machine affirmatively attempts to limit its conduct exclusively to Ohio and Pennsylvania.

It is the third clause of this code section that deserves the most attention here. That is whether Extreme Machine derives substantial revenue from goods used or consumed in Virginia. Although "it is difficult to identify an absolute amount which *ipso facto* must be deemed `substantial,'" Virginia courts are "trend[ing] toward liberal construction of `substantial revenue' provisions." *Ajax Realty*, 493 F.2d at 822 (finding a single contract price of $37,000, representing one-half of one percent of the company's total sales, constituted sufficiently substantial revenue for purposes of the long arm statute). In analyzing what constitutes "substantial revenue," the most relevant years are those directly preceding the filing of suit. See *Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43 (2005) (going on to find that an average yearly amount of $77,200 in the most relevant years, equaling .05 % of the company's sales, constituted "substantial revenue"). Additionally, although the sale itself took place outside of Virginia, this is of no consequence so long as the goods are used or consumed in Virginia. *Gordonsville Industries, Inc. v. American Artos Corp.*, 549 F. Supp. 200, 203 (W.D. Va. 1982). Nor does it matter that the revenue is derived indirectly from sales to Danieli, who eventually, sells the products to other customers. See *Marston v. Gant*, 351 F. Supp. 1122, 1126 (E.D. Va. 1972) ("The sale of goods to exporters in Japan, with knowledge that they would be eventually resold throughout the entire United States, is sufficient for the Court to infer that Okabe purposefully availed itself of Virginia's protection if the revenue it derives from the ultimate sales in Virginia is of a sufficient amount as to represent `substantial revenue'."). It would seem, then, that, in following the liberal construction Virginia courts

are giving to the term "substantial revenue," this Court should find that Va. Code § 8.01-238.1(A)(4) does indeed afford this Court the power to exercise jurisdiction over Extreme Machine.

There is, however, a fatal flaw in the arguments presented by Plaintiff and Danieli. The parties fail to show by a preponderance of the evidence that the goods in question were ever *used* or *consumed* in Virginia. Virginia acted as a transshipment point for goods ultimately destined for Italy. The only evidence regarding this point is Mr. Russo's deposition testimony that, based on his years of experience working for Danieli, he was aware that products sold to Ilva were destined for Italy, and, therefore, Virginia was not their ultimate resting place. This tends to show that the products were not used in Virginia. Evidence does show that Danieli sold and shipped some Extreme Machine products to Roanoke, Virginia. Neither Plaintiff nor Danieli offer any other evidence that the products were used in Virginia. The evidence merely shows that they were, at some point, present in Virginia.

Generally, a plaintiff need only make a *prima facie* showing of jurisdiction. *Massey Energy Co. v. United Mine Workers*, 69 Va. Cir. 118, 120 (2005). Where a plaintiff has alleged the long-arm statute is satisfied and the defendant merely denies the allegation, a court must construe all relevant allegations in the light most favorable to the plaintiff. See *Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681, 684 (E.D. Va. 1999). This might seem to be the case here with respect to the use element of Va. Code § 8.01-328.1(A)(4) where Plaintiff has alleged use and Extreme Machine merely denies use in Roanoke, Virginia. At this point, however, the Court has taken evidence on this issue, and the burden shifts to Plaintiff to prove by a preponderance of the evidence that this Court may exercise jurisdiction over Extreme Machine. See *Azzure Denim, L.L.C. v. E. & J. Lawrence Corp.*, 69 Va. Cir. 485, 486 (2006). Though neither party has shown the Court conclusively whether Extreme Machine's products were used in Virginia for purposes of Va. Code § 8.01-328.1(A)(4), it is Plaintiff's burden to show the court that they were. Plaintiff has failed to meet this burden. The evidence shows only that some goods were at some time in Roanoke and Norfolk (and those in Norfolk were ultimately destined for Italy). Therefore, the Court finds that it cannot exercise jurisdiction over Extreme Machine under Va. Code § 8.01-328.1(A)(4).

Assuming, however, that Extreme Machines products were in fact used in Virginia, the Court still may not exercise jurisdiction over Extreme Machine in this instance. Exercising jurisdiction over Extreme Machine would not comport with the requirements of the United States Constitution.

II. *Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits this Court from exercising jurisdiction over Extreme Machine in this case. To assert that a court may exercise *in personam* jurisdiction over a foreign defendant who has not consented to suit there, a plaintiff must show that the defendant purposefully directed its activities to the residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The defendant must have such minimum contacts with the forum "that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Extreme Machine has not purposefully availed itself of the privileges of conducting business in Virginia such that it should expect to be haled into court in the Commonwealth. See *Burger King Corp.*, 471 U.S. at 474-76. The unilateral activity of Danieli creates an insufficient nexus between Extreme Machine and Virginia and will not satisfy the requirements of due process.

What constitutes "minimum contacts" under due process analysis depends on whether the Court intends to exercise general or specific jurisdiction over a defendant. To exercise general jurisdiction, that is, when a given suit does not arise out of the defendant's activities in the forum, "the requisite minimum contacts between the defendant and that state [must be] fairly extensive." *Weinstein v. Todd Marine Enterprises, Inc.*, 115 F. Supp. 2d 668, 673 (E.D. Va. 2000). "Those contacts must be continuous and systematic." *Id.* Certainly. here, it cannot be said that Extreme Machine's contact with Virginia has been continuous or systematic. Extreme Machine has no Virginia customers, it conducts all of its business exclusively in Ohio and Pennsylvania, and only eight times between 2005 and 2009 did its products even make their way to the Commonwealth, and then, only at the behest of one of its customers. On the other hand, where a court intends to exercise specific jurisdiction, that is, where the given suit arises out of the defendant's activities within the forum, the contacts do not need to be so extensive. *Id.* However, "the fair warning requirement inherent in due process still demands that the defendant `purposefully directed' its activities to the forum." *Id.* (quoting *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir. 1989)). Thus analysis turns on whether Extreme Machine's conduct accurately can be described as purposefully directing its activities to Virginia.

A single business transaction is sufficient to confer personal jurisdiction. See, e.g., *McGee v. International Life Ins. Co.*, 355 U.S.

220, 223-24, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957); *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664 (1971). Furthermore, "a defendant need not ever physically enter Virginia in connection with the disputed transaction." *Massey Energy Co. v. United Mine Workers*, 69 Va. Cir. 118, 123 (2005) (quoting *Mason v. Shirk & Shirk*, 32 Va. Cir. 193, 195 (1993)). Plaintiff and Danieli contend that, by packaging, weighing, labeling, and finally shipping the box at issue to Ilva in Virginia, Extreme Machine completed a business transaction in Virginia. This, they argue, purposefully directed Extreme Machine's activities to the residents of this Commonwealth. This is a flawed understanding of Extreme Machine's activities. Extreme Machine never purposefully directed any activity toward Virginia.

Extreme Machine sold its products to Danieli, another foreign company, who sold them in a second transaction to Ilva. Extreme Machine, as a service to *Danieli*, packaged the products, weighed them, and labeled them. As a service to and at the direction of *Danieli*, Extreme Machine completed *Danieli's* preprinted bill of lading forms. *Danieli* contacted Ilva, who decided which carrier to employ for shipment. Extreme Machine shipped all of its products FOB; Extreme Machine did not direct its product anywhere after it left its Youngstown, Ohio, facility. *Danieli* and its customers dictated shipping methods and destinations. All conduct on the part of Extreme Machine occurred in Ohio and Pennsylvania. After packaging the freight at issue, Extreme Machine had knowledge of the fact that the products would be traveling to Virginia. However, this is of no consequent because "the foreseeability of injury in a distant forum is not the touchstone of minimum contacts." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986).

It is difficult to find contact between Extreme Machine and Virginia beyond the mere knowledge that its products would go to Virginia before being shipped to Italy. The only, and very, minimum contact Extreme Machine has with Virginia is tangential at best. Extreme Machine sold its products to Danieli who later sold the products to a company that used Virginia as a transshipment location. The unilateral act of Danieli in selling products to Ilva is insufficient to establish Extreme Machine's contact with Virginia and therefore the foreseeability required by due process that it might be haled into court in this forum. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Extreme Machine has not purposefully directed any activity toward the Commonwealth. The record does not establish that Extreme Machine has contact with Virginia by which this Court could subject Extreme Machine to personal jurisdiction within the bounds of the Constitution. Therefore, Extreme Machine may not be haled into this Court.

## Conclusion

Determining whether this Court can exercise *in personam* jurisdiction over Extreme Machine requires a two-part finding. First, Virginia's long-arm statute must be applicable to Extreme Machine's conduct. Second, Extreme Machine must have such minimum contacts with Virginia that haling it into court here would not offend traditional notions of fair play and substantial justice. The Court finds neither. Extreme Machine conducts no activity in Virginia that would subject it to the long-arm statute. Additionally, Plaintiff has failed to meet his burden of proving its products are actually used in Virginia. Even if he did, however, it would be of no matter because the constitutional demands are not met. Extreme Machine could not reasonably foresee being haled into court because of Danieli's unilateral conduct in making Extreme Machine products available in Virginia.

The Court grants Defendant's motion and dismisses the suit against Extreme Machine.